# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Zachary Manickas-Hill, being sworn, state:

## Introduction and Agent Background

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am also an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since October 2022. I am currently assigned to the DEA's New England Field Division, Bedford Division Office. I was previously assigned to the Providence District Office. During my time as a Special Agent, I have participated in numerous investigations and arrests involving violations of state and federal controlled substances laws, including Title 21, U.S.C. Sections 841(a)(1) and 846. A number of those investigations resulted in arrests, indictments, and convictions for violations of drug laws and/or other criminal offenses, the seizure of drugs, money, and vehicles, and the forfeiture of personal property. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. Through my training and experience, I have become familiar with the way illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

3. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, statewide, national, and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the way drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking.

4. As a result of my training and experience, I am familiar with the methods, routines, and practices of individuals involved in the use, sale and trafficking of narcotics. I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver, and dispense, import and export, and use controlled substances such as methamphetamine, fentanyl, heroin, cocaine, marijuana, prescription medications, and others. I have debriefed numerous defendants, informants, and witnesses who have personal knowledge about drug activities and the operation of drug trafficking organizations. I have sworn out numerous affidavits in support of search warrants, arrest warrants, and other Court applications.

**Purpose of the Affidavit**

7. I submit this affidavit in support of a criminal complaint charging Gautier Frellin Troncoso (hereinafter, "TRONCOSO") with possession with intent to distribute five kilograms or more of cocaine, on or about September 26, 2026, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii) (the "Charged Offense"). As described below, on September 26, 2026, TRONCOSO received a shipment of over five kilograms of suspected cocaine in Needham, Massachusetts.

8. This affidavit does not set forth all the facts developed during this investigation. Rather, it sets forth only those facts that I believe are necessary and sufficient to establish probable cause to believe TRONCOSO committed the Charged Offense.

**Probable Cause**

10. On September 25, 2026, investigators received information from a Pennsylvania State Trooper regarding the planned delivery of approximately 33 kilograms of suspected cocaine to a location in Needham, Massachusetts. The Pennsylvania State Trooper explained that a man, who later agreed to work with law enforcement (hereinafter, "CS"), was pulled over for a traffic infraction in Pennsylvania.[1] During the traffic stop, the Trooper obtained consent from the CS to search his truck. During the search, the Trooper seized approximately 33 kilograms of a compressed white substance in a cardboard box in the cab of the truck. The Trooper conducted a field-test on the substance, which resulted in a presumptive positive test for cocaine. The CS told the Trooper that he intended to deliver the cocaine to a man in front of the Coca-Cola Beverages Northeast building (hereinafter, "Coca-Cola Building") in Needham, Massachusetts the following day. Based on experience and training, the positive field test, the physical appearance and packaging of the substance, and the CS's statements, investigators believe the substance contains cocaine and weighs approximately 33 kilograms.

11. The CS agreed to cooperate with investigators and complete the delivery of suspected cocaine likely in the hopes of obtaining leniency at charging and/or sentencing. To complete the delivery, out of the 33 kilograms of suspected cocaine, investigators removed approximately 27 kilograms of suspected cocaine and replaced them with 28 sham kilograms.

[1] The CS was pulled over for "following too closely."

Investigators kept six kilograms of suspected cocaine in the bag for the intended delivery. The Trooper then accompanied the CS on his trip to Massachusetts. The CS explained to investigators that he has made deliveries of cocaine to this area before. The CS stated that on prior deliveries, he would park near the Coca-Cola Building and open the hood of his truck and pretend like he was working on the motor. The man receiving the cocaine delivery would open the cab of the CS's truck, take the cocaine, and leave money in the cab for the CS.

12. On September 26, 2026, at approximately 7:00 a.m., investigators set up surveillance near the Coca-Cola Building. Prior to the planned transaction, investigators met with the CS at a predetermined location. The CS had been supervised by the Trooper during the drive from Pennsylvania to the predetermined location. Investigators searched the CS and the CS's vehicle for contraband and currency with negative results, with the exception of an open black duffle bag that contained the six kilograms of suspected cocaine and 28 kilograms of sham. Investigators provided the CS with an audio recording device to use during the transaction. Investigators then surveilled the CS as he drove to the meeting location, which was Third Ave, Needham, MA, which is across the street from the Coca-Cola Building.

13. At approximately 8:30 a.m., the CS parked his truck on Third Ave. Shortly thereafter, a white Jeep Grand Cherokee, bearing Massachusetts registration 6ANN23, parked in front of the CS's vehicle. Investigators queried the registration in the Massachusetts Registry of Motor Vehicles ("RMV") and learned the Jeep was registered to TRONCOSO, with listed address 9 Fulkerson Ave, Methuen, MA. Investigators observed a man, later identified as TRONCOSO, exit the Jeep and approach the passenger side door of the CS's vehicle. TRONCOSO told the CS

that he did not have the money and that the CS would get his money later, or words to that effect.[2] TRONCOSO took the open black duffle bag containing the six kilograms of suspected cocaine and 28 sham kilograms from the CS's truck and walked back towards the Jeep. Investigators observed TRONCOSO place the duffle bag into the trunk of the Jeep. Once TRONCOSO entered the driver's seat of the Jeep, investigators approached and placed TRONCOSO under arrest. Investigators searched the trunk of the Jeep and seized the six kilograms of suspected cocaine and 28 sham kilograms in the open black duffle bag.

14. Investigators read TRONCOSO his *Miranda* rights in Spanish, which he waived. TRONCOSO signed a written consent form in Spanish allowing investigators to search his cell phone. On TRONCOSO's cell phone, investigators observed a conversation on "Threema," which is an encrypted messaging application. In the conversation, TRONCOSO received instructions from an individual saved as "ggggg," to arrive at the meeting location at 8:30 a.m. In the conversation, TRONCOSO sent a picture of a dollar bill with a serial number, which investigators believe to be a "token" ensuring that the drug transaction has not been compromised by law enforcement. In the time leading up to the transaction, TRONCOSO texted "ggggg" multiple updates on his estimated time of arrival to the meeting location.

15. Based on my training and experience, the information provided by the CS, the Threema conversation on TRONCOSO's phone, the statement TRONCOSO made to the CS during the delivery regarding lack of payment, and the fact investigators observed TRONCOSO transport an open bag filled with suspected cocaine into his vehicle, I believe TRONCOSO

[2] This communication was audio recorded but the recording is muffled.

knowingly possessed with intent to distribute over five kilograms of cocaine on September 26, 2026.

## CONCLUSION

29. Accordingly, based on the information above, I believe that TRONCOSO is a narcotics trafficker and that on September 26, 2026, he knowingly and intentionally possessed with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(ii).

Respectfully submitted,

Zachary Manickas-Hill /by Paul G. Levenson
Zachary Manickas-Hill, Special Agent
DEA

Sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 on September 28, 2026.

Hon. Paul G. Levenson
Chief, United States Magistrate Judge